IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

REGINALD DARRELL TAYLOR,　§
　　　　　　　　　　　　　　　§
　　　　　　　　　Plaintiff,　§　　Civil Action No. 3:21-CV-0999-D
　　　　　　　　　　　　　　　§
VS.　　　　　　　　　　　　§
　　　　　　　　　　　　　　　§
EL CENTRO COLLEGE, et. al.,　§
　　　　　　　　　　　　　　　§
　　　　　　　　Defendants.　§

MEMORANDUM OPINION
AND ORDER

*Pro se* plaintiff Reginald Darrell Taylor ("Taylor"),[1] an African-American male who had already graduated from the El Centro campus of Dallas College, was twice denied access to the school's library. Taylor principally maintains that he was refused entry based on his race and gender rather than his status as a former student who lacked a current student ID. Taylor now sues for monetary and equitable relief based on myriad federal- and state-law claims alleged against the following defendants: El Centro College, Dallas County Community College District, Dallas College, and Dallas Campus Police[2] (collectively, the "Institutional Defendants"),[3] and Lieutenant Byron Stewart ("Lt. Stewart"), Captain Smith,

---

[1] Taylor's middle name is spelled "Darrel" on ECF, but prior court orders, and the parties, have spelled it "Darrell."

[2] Although Taylor refers to this party as "Dallas Campus Police," Compl. ¶ 7, the party is referred to on ECF and in some of the briefing as "Dallas County Community College Police." *See, e.g.,* ECF No. 21, at 10.

[3] For ease of reference the court will use the term "Institutional Defendants" throughout this memorandum opinion and order, but only defendant Dallas College is a

Officer Guerro, Officer Valdez, Chancellor Joe May ("Chancellor May"), and President Jose Adames (collectively, the "Individual Defendants").[4]   The following five motions are pending for decision: the Institutional Defendants' September 13, 2021 motion to dismiss under Fed. R. Civ. P. 12(b)(6); the Individual Defendants' September 13, 2021 motion to dismiss under Rule 12(b)(6); defendants' October 21, 2021 motion to stay discovery pending resolution of their motions to dismiss; Taylor's October 30, 2021 motion for leave to extend time; and defendants' November 19, 2021 opposed motion for entry of protective order.[5]

For the reasons explained, the court grants the Institutional Defendants' and the Individual Defendants' motions to dismiss, grants Taylor leave to replead, and denies the other motions.

---

proper party.  Defendant El Centro College is actually one of the campuses of Dallas College, and Dallas Campus Police does not have a separate jural existence from Dallas College.  *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991) (denying suit against police department because plaintiff failed to show that police department was given authority to engage in litigation); *see also Barrie v. Nueces Cnty. Dist. Attorney's Office*, 753 Fed. Appx. 260, 264 (5th Cir. 2018) (per curiam) ("Neither party cites a law that has authorized the [governmental entity] to be sued, nor are we aware of any such law.").  And Dallas County Community College District has been succeeded by Dallas College.  The court therefore dismisses Taylor's actions against El Centro College, Dallas County Community College District, and Dallas Campus Police.

[4]Taylor also sued Allied University, but the court dismissed Taylor's action against Allied University without prejudice after he failed to effect timely service.

[5]The Institutional Defendants note that Taylor does not appear to assert any claims against Chancellor May and Lt. Stewart.  Taylor does not refer to either party in his answers to the magistrate judge's questionnaire, and where the complaint states that Taylor is asserting his claims against "the defendants," he does not include Chancellor May.  Because doing so does not affect the court's disposition of defendants' motions to dismiss, the court will assume *arguendo* that Taylor is asserting these claims against all defendants.

# I

Taylor, an African-American male, is a 2016 graduate of what is now the El Centro campus of Dallas College.[6]  According to Taylor, when he returned to the El Centro campus on June 26, 2019[7] to use the library to make photocopies, he was "discriminated against" and denied access "based on race, color, gender, . . . [and] retaliation."  Compl. ¶¶ 2, 43; Quest. Ans. at p. 2.1.  Taylor alleges that Officer Valdez threatened to press criminal charges if Taylor did not leave the library, despite the fact that "Graduates, non-degree holders, alum,

---

[6]In deciding defendants' Rule 12(b)(6) motions to dismiss, the court construes the complaint in the light most favorable to Taylor, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  The court's recitation of the facts relies in part on Taylor's answers to the magistrate judge's questionnaire.  *See, e.g., Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) ("To aid in the determination of whether an IFP complaint is frivolous or fails to state a claim, this Court has approved the use of an evidentiary hearing or questionnaires."); *Burney v. Mendes*, 2005 WL 43980, at *1 (N.D. Tex. Jan. 7, 2005) (Stickney, J.) ("The Fifth Circuit Court of Appeals has approved the use of questionnaires as a proper method to develop the factual basis of a pro se complaint."), *rec. adopted*, 2005 WL 177901 (N.D. Tex. Jan. 26, 2005) (Fitzwater, J.).

Because Taylor is a *pro se* litigant, the court construes his complaint liberally.  *See Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).  The court also applies a liberal construction when reading Taylor's answers to the magistrate judge's questionnaire.  *See Robertson v. States*, 2021 WL 1009334, at *2 (N.D. Tex. Feb. 18, 2021) (Ray, J.) (looking to questionnaire and liberally construing claims), *rec. adopted*, 2021 WL 977080 (N.D. Tex. Mar. 16, 2021) (Lynn, C.J.); *Wood v. Barrera*, 2020 WL 7121660, at *6 (N.D. Tex. Oct. 30, 2020) (Bryant, J.) (same), *appeal dism'd*, 2021 WL 2283847 (5th Cir. 2021); *McDuffy v. Jessup*, 2010 WL 11561772, at *1 (N.D. Tex. May 20, 2010) (Solis, J.) (same); *Coker v. Elerick*, 2005 WL 241215, at *1 (N.D. Tex. Jan. 31, 2005) (Stickney, J) (same), *rec. adopted*, 2005 WL 415682 (N.D. Tex. Feb. 18, 2005) (Boyle, J.).

[7]Taylor's complaint alleges that the date was June 26, 2019, but his answers to the magistrate judge's questionnaire state at one point that the date was June 19, 2019.  This appears to be mistaken, however, because his questionnaire answers consistently state elsewhere that the date was June 26, 2019.

alumni, and classmates of Mr. Taylor and of El Centro College, Dallas Community College District that [were] of a different gender and/or ethnicity [were] not restricted from accessing any of the [library] resources." Compl. ¶ 45.

While Taylor alleges that the officers denied him access for discriminatory reasons, he also asserts that the officers' *stated* reason was that he was not a current student. One officer stated that Taylor was being denied access because "the institution was a private college and only allowed faculty and current students access to resources." Quest. Ans. at p. 6 (emphasis omitted). Another officer stated that access was being denied because Taylor needed to be a "current student" with a "valid school id." *Id.* at p. 7. Shortly thereafter, the library faculty posted a sign stating that only current students were permitted to enter the library.

In November and December 2019, Taylor attempted to communicate with Dallas College faculty to gain access to the library. On November 19, 2019 he emailed Karen Stills ("VP Stills"), the Vice President of Student Services & Enrollment Management, outlining his concerns about the alleged discriminatory behavior and the denial of library access. On December 2, 2019 he met with VP Stills to discuss his concerns. On December 11, 2019 he sent his concerns to the Campus Police chief.

On December 13, 2019 Taylor again attempted to enter the El Centro library, but was refused access. He recorded his interaction with faculty and police during this encounter despite the officers' attempts to restrict him from recording.

- 4 -

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind*., 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  To survive defendants' Rule 12(b)(6) motions to dismiss, Taylor must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678 (citation omitted).

III

The court turns first to Taylor's state common law claims.

A

Taylor asserts that the Individual Defendants[8] and the Institutional Defendants committed various torts, including intentional infliction of emotional distress, slander, defamation, negligence, and premises liability.[9] The Institutional Defendants maintain that they are immune from tort claims and other state-law claims. Similarly, the Individual Defendants contend that they are also entitled to governmental immunity for suits against them in their official capacities. And to the extent Taylor asserts claims against them in their individual capacities, they posit that they are protected under the Texas Tort Claims Act

---

[8]Taylor states that he is suing the Individual Defendants in their official capacities. But construing his complaint liberally, *see supra* note 6, the court assumes that Taylor's claims are asserted against the Individual Defendants in their individual capacities as well.

[9]He also asserts a "false advertising" claim, but this claim fails. To the extent he alleges a state common law claim, it is precluded for the reasons discussed in this section. *See infra* § III(C)-(D).

To the extent he is asserting a false advertising claim under § 43(a) of the Lanham Act, he is not barred by governmental immunity. *See Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 2017 WL 7201938, at *3 (S.D. Tex. Sept. 20, 2017) (citing *Guillory v. Port of Hous. Auth.*, 845 S.W.2d 812, 815 (Tex. 1993)). But this claim still fails because Taylor has not pleaded sufficient facts for the court to draw the reasonable inference that Dallas College advertised access to the library or that this advertisement was false. *See Iqbal*, 556 U.S. at 678; *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (listing elements of claim). Taylor alleges that "Defendants advertise on their website, that they provide economic benefits to . . . the community." Compl. ¶ 3. But this allegation does not enable the court to reasonably infer that Dallas College or the Individual Defendants advertised access to the library for everyone. And, even if it did, Taylor has not adequately pleaded how this advertisement was false.

- 6 -

("TTCA").   Taylor responds that defendants are not immune because "Texas Local Government Section 271.152 fully waives" governmental immunity for breach of contract and other acts of discrimination.[9]  ECF No. 39 at 15-16.  Defendants reply that Taylor has not adequately responded to their arguments.

B

Because defendants assert governmental immunity, the court will construe their motions to dismiss as being made not only under Rule 12(b)(6) but also under Rule 12(b)(1).  Under Texas law, governmental immunity removes a court's subject matter jurisdiction from suit.  *See Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *see also Powell v. Greenville Indep. Sch. Dist.*, 2010 WL 3359620, at *2-3 (N.D. Tex. June 24, 2010) (Ramirez, J.), *rec. adopted*, 2010 WL 3359618 (N.D. Tex. Aug. 20, 2010) (Lindsay, J.).  A Rule 12(b)(1) motion is the appropriate vehicle to challenge subject matter jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).  Accordingly, the court construes the Institutional Defendants' and the Individual Defendants' Rule 12(b)(6) motions as Rule 12(b)(1) motions to the extent the motions assert governmental immunity.  *See, e.g., Nixon v. Hegar*, 2021 WL 4197207, at *2 (N.D. Tex. Sept. 15, 2021) (Fitzwater, J.) (construing Rule 12(b)(6) motion as Rule 12(b)(1) motion).

---

[9]Taylor filed a motion to extend the time to respond to the Institutional and Individual Defendants' motions to dismiss, which this court granted.  Although the court extended the response deadline to November 3, 2021, Taylor did not file his response brief until November 12, 2021.  Defendants maintain that the court should not consider the untimely response.  Although the court could decline to consider the response because it is late, the court will not do so here because, even considering Taylor's late response, his claims fail.

A Rule 12(b)(1) motion challenging the court's subject matter jurisdiction can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523). "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citations omitted).

## C

Applying the Rule 12(b)(1) standard, the court now assesses whether Taylor has met his burden to establish jurisdiction. The court first considers Taylor's claims against the Institutional Defendants, which, as explained above, *see supra* note 3, means only Dallas College since it is the only proper party in this group of defendants.

As a junior college district, Dallas College enjoys governmental immunity from suit

unless immunity is waived.[10]  *See Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 297

(5th Cir. 2021) ("Texas governmental immunity, unlike constitutional sovereign immunity,

applies to the state's political subdivisions, including junior college districts"); *Williams v.*

*Dall. Cnty. Cmty. Coll. Dist.*, 2015 WL 13742548, at *5 (N.D. Tex. Feb. 4, 2015) (Godbey,

J.).[11]  The Texas legislature has partially abrogated governmental immunity via the TTCA,

which provides limited waivers of immunity.  *See Austin v. Hood Cnty.*, 2007 WL 1544379,

at *2 (N.D. Tex. May 29, 2007) (Fitzwater, J.).[12]  But the TTCA does not abrogate immunity

in any way relevant in this suit.  *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.021 &

101.051 (West 2020).  And the waiver found in the TTCA is particularly narrow for junior

colleges.  *See Wood v. Coastal Bend Coll.*, 2010 WL 2136621, at *4 (Tex. App. May 27,

2010, pet. denied) ("[S]chool districts and junior colleges are expressly excluded from the

---

[10]Governmental immunity is distinct from sovereign immunity.  Sovereign immunity generally defeats a court's subject matter jurisdiction over a suit against a state unless the state expressly consents to suit.  *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)).  "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts."  *Id*. (citing *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)).

[11]A municipality does not enjoy immunity from suit for tortious conduct committed while exercising propriety functions.  *See Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) ("A municipality is not immune from suit for torts committed in the performance of its proprietary functions, as it is for torts committed in the performance of its governmental functions.").  The parties do not dispute that Dallas College was performing a governmental function.  *See Gravely v. Lewisville Indep. Sch. Dist*., 701 S.W.2d 956, 957 (Tex. App. 1986, writ ref'd n.r.e.) ("No Texas appellate court, so far as we know, has ever held that a school district has served in a non-governmental capacity.").

[12]For example, the TTCA waives immunity for negligence arising out of operation of a motor vehicle.  *See Williams*, 2015 WL 13742548, at *5.

waiver [of governmental immunity] except as to motor vehicles."). Immunity is not waived for negligence or gross negligence, *see Austin*, 2007 WL 1544379, at *3, premises liability, *Stamos v. Houston Independent School District*, 2020 WL 1528047, at *1-2 (Tex. App. Mar. 31, 2020, no pet.), defamation, intentional infliction of emotional distress, negligent hiring, supervision, training, or retention, *see Owens v. Dallas County Community College District*, 2017 WL 3190727, at *5 (N.D. Tex. May 16, 2017) (Stickney, J.), *rec. adopted*, 2017 WL 3172748 (N.D. Tex. July 26, 2017) (Lindsay, J.).

Accordingly, because Taylor has not identified, and the court is not aware of, any statute that waives Dallas College's immunity from Taylor's state-law tort claims Dallas College is entitled to governmental immunity, and Taylor's claims fail as a matter of law. *See Hill v. Fort Bend Indep. Sch. Dist.*, 275 F.3d 42, 2001 WL 1223672, at *4 (5th Cir. 2001) (per curiam) (affirming dismissal of slander and defamation claims because no statute waived independent school district's immunity from suit); *Jackson v. Dall. Indep. Sch. Dist.*, 1998 WL 386158, at *4 (N.D. Tex. July 2, 1998) (Fitzwater, J.) (dismissing defamation, libel, slander, and intentional infliction of emotional distress claims because plaintiff "ha[d] not demonstrated any basis to hold that such immunity does not apply").[13]

---

[13]Although these cases pertain to independent school districts, the Fifth Circuit has held that Texas junior college districts enjoy the same legal and constitutional status as independent school districts under Texas law. *See Kingsville Indep. Sch. Dist. v. Cooper*, 611 F.2d 1109, 1112 (5th Cir. 1980). And both entities enjoy the same immunity, *see Tercero*, 989 F.3d at 297, which is waived to the same extent, *see Wood*, 2010 WL 2136621, at *4.

D

To the extent the Individual Defendants are sued in their official capacities, they are also immune from Taylor's state-law tort claims. A suit against a government official in his official capacity is considered a suit against the government entity. *See Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011); *Jackson*, 1998 WL 386158, at *4 ("[A]n official capacity suit is a suit collectable against the official's government entity, not against the official individually") (citing *City of Beaumont v. Bouillion*, 869 S.W.2d 143, 146 n.5 (Tex.1995)). In other words, to the extent that Dallas College is immune, the Individual Defendants are also immune in their official capacities. Accordingly, Taylor's state tort-law claims against the Individual Defendants in their official capacities are dismissed.

E

To the extent Taylor asserts claims against the Individual Defendants in their individual capacities, these claims fail because Taylor has not pleaded sufficient facts for the court to draw the reasonable inference that the officials were not acting within the scope of their employment. *See Tipps v. McCraw*, 945 F.Supp.2d 761, 767 (W.D. Tex. 2013) ("[The Supreme Court of Texas] held that § 101.106 'foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment.'" (quoting *Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011)); *see also Carter v. Diamond URS Huntsville, LLC*, 175 F.Supp.3d 711, 752 (S.D. Tex. 2016). Accordingly, Taylor's claims asserted against the Individual Defendants in their individual capacities are

- 11 -

dismissed.[14]

F

The court now turns to Taylor's remaining state common law claim: for breach of contract. Taylor alleges that the Institutional Defendants and the Individual Defendants breached a contract with him.[15] Under Texas law, a breach of contract claim requires the plaintiff to prove "(1) the existence of a valid contract, (2) that [the plaintiff] performed [his] duties under the contract, (3) that the party [he] is suing breached the contract, and (4) that [the plaintiff] suffered damages as a result of the breach." *Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 832 (N.D. Tex. 2011) (Fitzwater, C.J.).

---

[14]Taylor makes the conclusory assertion in his response brief that the officials' actions were *ultra vires*. The *ultra vires* exception to governmental immunity provides that a state official acting in his official capacity who acts without legal or statutory authority may be sued for injunctive relief. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009) ("A state official's illegal or unauthorized actions are not acts of the State . . . [and not barred by] sovereign immunity." (internal quotation marks omitted)); *Thielemann v. Blinn Bd. of Trustees*, 2015 WL 1247018, at *3 (Tex. App. Mar. 17, 2015, no pet.) ("Governmental immunity, however, does not bar suits seeking to require state officials to comply with statutory or constitutional provisions."). An official acting *ultra vires* cannot be sued for retrospective relief (i.e., monetary damages). *Thielemann*, 2015 WL 1247018, at *3.

Although Taylor does seek prospective, equitable relief, he has failed to plead a claim for relief under this exception; he must plead "that a state official acted without legal authority or failed to perform a purely ministerial act." *Id.* But for the reasons discussed *infra* at § IV, he has failed to adequately plead that the officials acted without legal authority under state statutory or constitutional law. And he does not allege that the Individual Defendants failed to perform a purely ministerial act.

[15]The Institutional Defendants contend that governmental immunity applies because Taylor has not alleged the existence of a contract such that immunity is waived. But the court is bound by Fifth Circuit precedent and therefore concludes that Dallas College does not enjoy governmental immunity from breach of contract claims. *See Tercero*, 989 F.3d at 298.

- 12 -

Taylor has not pleaded a plausible claim for breach the contract.  He contends that his previous enrollment as a student at El Centro College created a contract between Dallas College and him that continued after he graduated.  He also points to Dallas College's policies regarding giving permits to community groups as a contract provision that authorizes him to use the El Centro library.

Even assuming *arguendo* that Taylor had a contractual relationship with El Centro that extended beyond his graduation, he has not plausibly pleaded how defendants breached the contract.  Considering that he is neither a community group nor did he seek a permit, he has not sufficiently alleged how the "provision" of the contract that he highlights—Dallas College's community group permit policy[16]—was breached.  *See Iqbal*, 556 U.S. at 679. Accordingly, Taylor has failed to plausibly plead a breach of contract claim, and the court dismisses this claim.

IV

The court now turns to Taylor's state-law statutory and constitutional claims.[17]

---

[16]The court may consider Dallas College's policies because Taylor has attached them to his complaint.  *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."). These policies state, *inter alia*, that "[s]uch facilities will be made available to *community groups*," ECF No. 3, App. 10 (emphasis added), and allows these entities to seek permits for access, *id.*

[17]His state constitutional and statutory claims are not barred by governmental immunity to the extent he alleges that the Individual Defendants acted *ultra vires* and he seeks equitable relief.  *See supra* note 14.

A

Taylor's claim under the Texas Equal Rights Amendment ("ERA") fails.  The ERA provides that "[e]quality under the law shall not be denied or abridged because of sex, race, color, creed, or national origin."  Tex Const. art. I, § 3a.  Under Texas law, however, there is no remedial statute similar to 42 U.S.C. § 1983; rather, Taylor can only seek equitable relief for violations of the ERA.  *See Reynolds v. City of Commerce, Tex.*, 853 Fed. Appx. 978, 980 (5th Cir. 2021) (per curiam).

Taylor does seek equitable relief.[18]  But his ERA claim fails because he has not adequately pleaded a basis for the relief he seeks.  To assert a claim for equitable relief under the ERA, a plaintiff must plausibly plead that equality has been denied, that equality was denied *because* of the person's race or sex, and that the action was not narrowly tailored to serve a compelling governmental interest.  *In re Dean*, 393 S.W.3d 741, 749 (Tex. 2012); *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 257 (Tex. 2002).

Assuming *arguendo* that Taylor has satisfied the first element, he has failed to meet the second.  Taylor has not adequately pleaded that he was denied access to the El Centro library because of his gender or race.  Taylor alleges few facts: essentially, that he is African-American and that he was denied access to the El Centro library.  He also asserts that the officers stated they were denying him access because he was not a current student.  The only

---

[18]He seeks, *inter alia*, "training on the subject of employment discrimination" for "Defendant's employees" and "[i]mplicit bias training for all levels of management by reputable outside vendors."  Compl. pp. 12-13.

suggestion of discrimination is Taylor's subjective beliefs, reflected in his conclusory allegations that he was "discriminated against" and denied access "based on race, color, gender, . . . [and] retaliation." Compl. ¶¶ 2, 43; Quest. Ans. at p. 2.1. Subjective beliefs, however, are generally insufficient to plausibly state a discriminatory action. *See Fontaine,* 2014 WL 6680711, at *5 ("The mere fact that Plaintiff might believe that these acts were taken for discriminatory or retaliatory reasons is not enough."). And his conclusory assertions are contradicted by his own pleadings, in which he alleges that the officers repeatedly stated that he was being denied access because he lacked a student ID. Finally, Taylor's allegation that "Graduates, non-degree holders, alum, alumni, and classmates of Mr. Taylor and of El Centro College, Dallas Community College District that [were] of a different gender and/or ethnicity [were] not restricted from accessing any of the [library] resources," Compl. ¶ 45, is conclusory and insufficient to plausibly plead a claim for relief. *See Baggett v. Burnet Consol. Sch. Dist.*, 2008 WL 80251, at *7 (W.D. Tex. Jan. 7, 2008), *rec. adopted*, 2008 WL 11408431 (W.D. Tex. Mar. 14, 2008). The court is therefore unable to draw the reasonable inference that Taylor was denied access to the El Centro library on the basis of his sex or race, and it dismisses his claim based on the Texas ERA.

### B

Taylor's claim for official oppression also fails. It is unclear what Taylor's allegation of "official oppression" refers to unless it is Tex. Penal Code Ann. § 39.03 (as identified by the Institutional Defendants and the Individual Defendants). But that statute does not provide a private cause of action. *See Hulett v. City of Dallas*, 2000 WL 1010674, at *8 (N.D. Tex.

July 20, 2000) (Kendall, J.) ("Plaintiff's official oppression claim fails against all Defendants because it is a criminal offense and not a cause of action that Plaintiff can allege against Defendants."); *see also Vasquez v. San Benito Consol. Indep. Sch. Dist.*, 2006 WL 8446897, at *1 (S.D. Tex. June 15, 2006); *Spurlock v. Johnson*, 94 S.W.3d 655, 658 (Tex. App. 2002, no pet.).  Accordingly, the court dismisses Taylor's official oppression claim.

C

Taylor's claim that the Individual Defendants violated the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"),[19] Tex. Bus. & Com. Code Ann. §§ 17.41-17.63, fails.[20]  A claim under the DTPA requires that plaintiff establish that "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages."  *In re Frazin*, 732 F.3d 313, 323 (5th Cir. 2013).  Assuming *arguendo* that Taylor qualifies as a consumer in the context of this lawsuit, he has not plausibly pleaded how the Individual Defendants engaged in false,

---

[19]As against the Institutional Defendants, Taylor cannot assert a DTPA claim at all. *Payne v. Midcrown Pavilion Apartments*, 2021 WL 3813378, at *9 (W.D. Tex. Aug. 26, 2021) ("[T]he DTPA does not apply to the City or its subdivisions because they are not 'persons' as defined by the Act.").

[20]As discussed, an officer acting *ultra vires* (i.e., beyond statutory or constitutional authority) may be sued for injunctive relief.  *See supra* note 14.  But Taylor's DTPA claim against the Individual Defendants in their official capacities is barred by governmental immunity to the extent Taylor seeks damages.  *See Davis v. Collin Cnty. Cmty. Coll. Dist.*, 2009 WL 3764135, at *3 (E.D. Tex. Nov. 9, 2009); *Dall. Cnty. v. Rischon Dev. Corp.*, 242 S.W.3d 90, 95 (Tex. App. Sept. 28, 2007, pet. denied) ("[T]he legislature has not waived appellant's immunity from suit under sections 27.01 or 17.50 of the Texas Business and Commerce Code.").

misleading, or deceptive acts.  At best, Taylor alleges that "Defendants advertise on their website, that they provide economic benefits to . . . the community," Compl. ¶ 3, but then denied him access to those benefits.  This allegation, however, does not enable the court to draw the reasonable inference that the Individual Defendants advertised access to the library for *everyone*; instead, Dallas College's policies make clear that these benefits are available to community groups who apply for permits.  Accordingly, the court dismisses Taylor's DTPA claim because he has not pleaded sufficient facts for the court to draw the reasonable inference that the Individual Defendants engaged in misleading or deceptive acts.

V

The court turns next to Taylor's federal constitutional claims under the Equal Rights Amendment and the First and Fourteenth Amendments of the federal constitution.[21]

A

Taylor's claim under the Equal Rights Amendment fails because there is no such amendment to the United States Constitution.

B

Taylor asserts claims under 42 U.S.C. § 1983 for violations of the First[22] and Fourteenth Amendments against the Institutional Defendants and the Individual Defendants

_____

[21]Taylor's federal constitutional and statutory claims are not barred by governmental immunity.  *Springboards to Educ., Inc.*, 2017 WL 7201938, at *3 (citing *Guillory v. Port of Hous. Auth.*, 845 S.W.2d 812, 815 (Tex. 1993)).

[22]The court construes Taylor's First Amendment claim to assert that the Individual Defendants violated his First Amendment right to record.

- 17 -

in their official capacities.  A suit against a government official in his official capacity is "only another way of pleading an action against an entity of which [the official] is an agent." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978) (addressing 42 U.S.C. § 1983); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (same) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity.").

1

Taylor's constitutional claims against the Institutional Defendants and Individual Defendants in their official capacities fail because he has not alleged that his First Amendment or Fourteenth Amendment rights were violated pursuant to a policy or custom. A plaintiff asserting a violation of a constitutional right under § 1983 against a municipality must establish that a municipal policy or custom inflicted the constitutional injury.[23]  A municipality is a "person" subject to suit under § 1983 in certain circumstances. *See Monell*, 436 U.S. at 690.  Although a municipality cannot be held liable simply on a theory of respondeat superior, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).  Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive

---

[23]Taylor must satisfy this requirement for his retrospective *and* prospective requests for relief.  *See Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 36-37 (2010) ("The language of § 1983 read in light of *Monell*[] . . . explains why claims for prospective relief, like claims for money damages, fall within the scope of the 'policy or custom' requirement.").

knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (internal quotation marks omitted).

"[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is the final policymaker." *Id*. (alteration omitted) (citations omitted) (internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

Taylor has not alleged that any policy or custom deprived him of a federally protected right under the First or Fourteenth Amendment. At most, Taylor plausibly asserts that Dallas College knew that he was being denied access to the El Centro library. But such knowledge alone does not plausibly plead that Dallas College had a policy to deny a right to record, under the First Amendment, or to deny equal protection and due process rights, under the Fourteenth Amendment. *See Reynolds*, 853 Fed. Appx. at 980 (affirming dismissal of claim

- 19 -

because plaintiff "fail[ed] to identify any such policy or custom and fails to allege specific facts showing that any such policy or custom was the cause of a constitutional violation."); *Stiff v. Stinson*, 2013 WL 3242468, at *4 (N.D. Tex. June 27, 2013) (Ramirez, J.) (dismissing claim because plaintiff "failed to allege either an official policy or custom" to violate his rights), *rec. adopted*, 2013 WL 3242468 (Fitzwater, C.J.); *Doe v. Dall. Cnty. Schs.*, 1999 WL 325015, at *3 (N.D. Tex. May 18, 1999) (Fitzwater, J.) (same).  And his two alleged incidents of discrimination do not plausibly plead a pattern so common and well-settled as to constitute a custom that fairly represents municipal policy.  *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 852 (5th Cir. 2009) (holding that 27 complaints of excessive force did not evidence a custom of excessive force).  Accordingly, the court dismisses Taylor's claims against the Institutional Defendants and the Individual Defendants, to the extent they are sued in their official capacities.

2

Although Taylor explicitly asserts his § 1983 claims against the Individual Defendants in their official capacities, the court will liberally construe his complaint and assume *arguendo* that he alleges these claims against the Individual Defendants in their individual capacities as well.  Even so, the claims fail.

i

The Individual Defendants assert the defense of qualified immunity.  Qualified immunity protects government officials from suit and liability for civil damages under § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known.  *E.g.*, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc) (per curiam). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [he has] alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.")).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*  "Even if the government official's conduct violates a clearly established right, the official is nonetheless

entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir.1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284 (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir.2001)).

ii

The Individual Defendants are entitled to dismissal of Taylor's First Amendment claim because he has not plausibly pleaded a constitutional violation.[24]

The court construes Taylor's reference to a First Amendment claim to allege that the Individual Defendants violated his First Amendment right to record[25] when the officers and faculty asked him to stop recording them.[26] Assuming *arguendo* that the right to record the

---

[24]The court's conclusion that the alleged conduct does not violate the Constitution ends the court's inquiry. *See, e.g., Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

[25]The Fifth Circuit has recognized that the First Amendment protects a right to record the police. *See Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017).

[26]To the extent Taylor asserts a First Amendment (or a Title VII) retaliation claim, the claim would fail because he has not plausibly pleaded that he engaged in conduct

police extends to the right to record library faculty and campus police, Taylor's claim fails because he only alleges that the Individual Defendants *attempted* to restrict his recording. In fact, he includes a transcript of his recording (although he does not identify the speakers), which shows that he in fact recorded his interactions with the Individual Defendants.[27] Although it appears from this transcript that he was asked to stop, the police officers never required him to stop recording, and Taylor does not allege that he was prevented from doing so. The facts as he pleads them are distinct from factual scenarios where courts have held that the right to record was violated—i.e., when the plaintiff was arrested or had his phone confiscated. *See, e.g., Noles v. Dial*, 2021 WL 4255640, at *5 (N.D. Tex. Aug. 25, 2021) (Toliver, J.) (collecting cases), *rec. adopted*, 2021 WL 4244780 (N.D. Tex. Sept. 17, 2021) (Godbey, J.). Here, Taylor has not pleaded sufficient facts for the court to draw the reasonable inference that he was prohibited by the Individual Defendants from recording them. Accordingly, the court dismisses Taylor's First Amendment claim.

iii

Taylor's Fourteenth Amendment equal protection claim fails because he has not plausibly pleaded discriminatory intent or that similarly-situated individuals were treated

_____

protected by First Amendment, *see supra* § V(B)(2)(ii), or by Title VII, *see infra* § VI(D)(2). *See Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005) (listing elements of claim); *Kostic v. Tex. A & M Univ. at Commerce*, 11 F.Supp.3d 699, 734 (N.D. Tex. 2014) (Horan, J.), *rec. adopted*, 11 F.Supp.3d 699 (Lynn, J.).

[27]The court may consider this transcript because it is attached to Taylor's complaint. *See Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387.

differently.

The court construes Taylor's reference to the Fourteenth Amendment as asserting a violation of the Equal Protection Clause by the Individual Defendants acting in their individual capacities. "[A] party who wishes to make out an Equal Protection claim must prove 'the existence of purposeful discrimination' motivating the [governmental] action which caused the complained-of injury." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997). To establish an equal protection claim, a plaintiff must show that he was treated differently from similarly-situated persons without a rational basis. *United States v. Abou-Kassem*, 78 F.3d 161, 165 (5th Cir. 1996); *see Sonnier v. Francis*, 217 Fed. Appx. 410, 411 (5th Cir. 1997) (per curiam) (addressing issue in context of whether application of § 570.21 violated right to equal protection). The crux of an equal protection claim is that the complaining person was treated differently from similarly-situated individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Taylor has not plausibly pleaded purposeful discrimination or that other similarly-situated individuals were treated differently. As discussed, Taylor has only alleged that he is African-American and was denied access to the El Centro library. He has also made the conclusory assertions that was "discriminated against" and denied access "based on race, color, gender, . . . [and] retaliation." Compl. ¶¶ 2, 43; Quest. Ans. at p. 2.1, and that "Graduates, non-degree holders, alum, alumni, and classmates of Mr. Taylor and of El Centro College, Dallas Community College District that [were] of a different gender and/or ethnicity [were] not restricted from accessing any of the [library] resources," *id.* at ¶ 45.

These claims fail because they are conclusory. *See Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (holding that plaintiff in § 1983 action must state specific facts, not merely conclusory allegations, to support his claim); *see Wicks v. Miss. State Emp. Servs.*, 41 F.3d 991, 996 (5th Cir. 1995) ("To merely make the charge [of racial animus] is insufficient."); *Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990) (holding that district court correctly dismissed "unsubstantiated" claim of different treatment by similarly-situated individuals); *Barnett v. Shaw*, 2011 WL 2200610, at *4 (N.D. Tex. May 18, 2011) (Toliver, J.) ("Plaintiff has presented only vague and conclusory allegations, based solely on his personal, subjective belief that he was treated differently than other similarly situated males."), *rec adopted*, 2011 WL 2214383 (N.D. Tex. June 7, 2011) (Lindsay, J.)

And beyond his conclusory assertions, "[h]e has alleged nothing to indicate that he has been treated differently from those situated similarly—the crux of an equal protection claim." *Russell v. Cockrell*, 2003 WL 21750862, at *7 (N.D. Tex. July 25, 2003) (Ramirez, J.), *rec. adopted*, 2003 WL 21750862 (Fitzwater, J.); *see Estate of Carmichael ex rel. Carmichael v. Galbraith*, 2012 WL 135682, at *4 (N.D. Tex. Jan. 4, 2012) (Fitzwater, C.J.). Nor has Taylor "shown" that he was discriminated against "due to purposeful discrimination or any impermissible motive," and "[f]or that reason alone, [he] has stated no viable equal protection violation." *Branch v. Berkebile*, 2008 WL 3155137, at *3 (N.D. Tex. July 30, 2008) (Ramirez, J.), *rec. adopted*, 2008 WL 3155137 (Fitzwater, C.J.). Accordingly, the court dismisses Taylor's Fourteenth Amendment equal protection claim.

- 25 -

iv

Taylor's Fourteenth Amendment due process claim fails because he has not plausibly pleaded a property interest in accessing the El Centro library.[28]

The court construes Taylor's reference to the Fourteenth Amendment as asserting a violation of the due process clause by Individual Defendants acting in their individual capacities. The Due Process Clause of the Fourteenth Amendment protects against deprivations of life, liberty, or property without due process of law. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Taylor's complaint does not appear to allege that the Individual Defendants deprived him of life or liberty.[29] Taylor also fails to explicitly plead that he obtained a property interest in accessing the library. But the court will liberally construe his complaint and assume *arguendo* that he is asserting a property interest in accessing the El Centro library. Taylor appears to contend that his property rights were violated because,

---

[28]Taylor asserts an alternate basis for his due process claim in his response brief, stating that the behavior of the Institutional Defendants and the Individual Defendants violated due process because of their "[c]onscious-shocking" behavior. ECF No. 39 at p. 20. This allegation does not satisfy the standard for behavior that shocks the conscious. *See Reyes v. N. Tex. Tollway Auth., (NTTA)*, 861 F.3d 558, 562 (5th Cir. 2017) (describing standard).

[29]It appears that Taylor is asserting a due process liberty violation. He alleges that he was humiliated and slandered, and he contends in his response brief that, when his reputation is at stake, due process must be satisfied. To the extent these claims can be construed as asserting a violation of a liberty interest, Taylor must satisfy the stigma-plus test and show that, due to any stigma, he has been denied a right or status previously enjoyed under state law. *See Schultea v. Wood*, 27 F.3d 1112, 1117 (5th Cir. 1994), *on reh'g en banc*, 47 F.3d 1427 (5th Cir. 1995); *Wilson v. Davis*, 2016 WL 4720480, at *3 (N.D. Tex. Sept. 8, 2016) (Fitzwater, J.). Taylor has not plausibly pleaded any loss of right as a result of the stigma.

although Dallas College offers access to the El Centro library to all of the community, he was denied access.

The Fourteenth Amendment's protection of property "is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U .S. 564, 576 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. Property interests are not created by the United States Constitution; they are created and their dimensions are defined by existing rules or understandings that stem from an independent source. *Id.* An individual's property interest may be created by statute, contract, or implied contract. *Evans v. City of Dallas*, 861 F.2d 846, 848 (5th Cir. 1988). The court must therefore refer to state or local law, any existing contract, or any understandings between the parties to see whether Taylor possessed a legitimate claim to access the library. *See Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997).

Taylor has not plausibly pleaded that he has a property interest in accessing the El Centro library. His complaint alleges that "Defendants"—presumably Dallas College—advertise on their website that they provide educational benefits to the community. And they sent him mail "beckoning his attendance" for several events. Compl. ¶ 36. Furthermore, he references the Institutional Defendants' permit policies, which authorize issuance of permits to community groups to use the library.

Taken together, these allegations fail. Taylor does not point to any state law or

contract to establish a property right.  Nor does he not cite any discretion-limiting language

mandating an award of access to the library to non-students if certain criteria are met.  *See*

*Da Vinci Inv., Ltd. P'ship v. Parker*, 622 Fed. Appx. 367, 375 (5th Cir. 2015) (per curiam)

(holding that property interest could be created with explicit mandatory language).  And

although Taylor does point to certain library policies, they describe granting permits for

*community groups*—not individuals.  ECF No. 3, App. 10 ("Such facilities will be made

available to community groups . . . .").

 Accordingly, the court dismisses Taylor's Fourteenth Amendment due process claim.

*See Wilson v. Wichita State Univ*., 662 Fed. Appx. 626, 629 (10th Cir. 2016); *Rihm v.*

*Hancock Cnty. Pub. Library*, 954 F.Supp.2d 840, 857 (S.D. Ind. 2013) (dismissing due

process claim when litigant failed to identify any property interest in accessing library);

*Moore v. Wisc. Dep't of Admin*., 2011 WL 1897772, at *2 (W.D. Wis. May 18, 2011).[30]

VI

 Finally, the court considers Taylor's federal statutory claims.  Taylor asserts federal

statutory claims the Federal Trade Commission Act ("FTCA"), the Civil Rights Restoration

Act of 1987, the Civil Rights Act of 1866, and Titles VI, VII, and IX of the Civil Rights Act.

---

[30]The Tenth Circuit dismissed a similar claim for failure to plausibly allege a procedural due process right.  It granted the plaintiff leave to amend his claim because he "might be able to show that the university has a policy on library usage that creates a property interest."  *Wilson*, 662 Fed. Appx. at 629.  The court concluded that "[i]f the university's policy is to issue cards unless certain rules are violated, that self-restriction on the University's discretion could create a due-process property interest."  *Id.*

A

Taylor's claim under the FTCA fails.  The FTCA does not provide a private cause of action.  *Norris v. Fairbanks Capital Corp.*, 178 Fed. Appx. 401, 403 (5th Cir. 2006) (per curiam); *Purdin v. Wells Fargo Bank, N.A.*, 2016 WL 1161808, at *3 (N.D. Tex. Mar. 23, 2016) (Fitzwater, J.) ("[The] FTCA does not provide a private cause of action.").  Accordingly, the court dismisses Taylor's FTCA claim.

B

Taylor's claim under Civil Rights Restoration Act of 1987 ("CRRA") also fails.  The CRRA is an Act passed by Congress, *inter alia*, to clarify certain definitions in Title IX and Title VI.  *See* PL 100-259 (S 557), PL 100-259, March 22, 1988, 102 Stat. 28; *Ayers v. Allain*, 893 F.2d 732, 755 (5th Cir. 1990), *on reh'g*, 914 F.2d 676 (5th Cir. 1990); *Alegria v. Tex.*, 2007 WL 2688446, at *13 (S.D. Tex. Sept. 11, 2007).  In other words, the Act does not provide a private cause of action separate from those statutes. Accordingly, the court dismisses Taylor's claim under the CRRA.

C

Taylor's claim under the Civil Rights Act of 1866 must also be dismissed.  The operative language of the Civil Rights Act of 1866 is codified in 42 U.S.C. § 1981.  *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 385 (1982) ("The operative language of [both § 1981 and § 1982] apparently originated in § 1 of the Civil Rights Act of 1866.").  Section 1981, however, does not provide a private cause of action, separate from § 1983, against local government entities.  *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458,

- 29 -

462 (5th Cir. 2001) ("Subsection (c) [of § 1981] does not expressly create a remedial cause of action against local government entities, and we are not persuaded that such a remedy should be implied."); *see Washington v. City of Gulfport*, 351 Fed. Appx. 916, 918-19 (5th Cir. 2009) (per curiam).  In other words, Taylor's remedial cause of action for a violation of § 1981 is found in § 1983.  *See Jones v. Tex. Juvenile Justice Dep't*, 646 Fed. Appx. 374, 376 n.5 (5th Cir. 2016) (per curiam) (holding that plaintiff may assert a § 1983 cause of action to remedy a § 1981 violation).

But because Taylor must assert his § 1981 violation claim via a § 1983 claim,  his claim against the Institutional Defendants and the Individual Defendants in their official capacities fails under *Monell* for the reasons discussed above.  *See supra* § V(B)(1).  And to avoid dismissal of his § 1981 claim against the Individual Defendants sued in their individual capacities, he must plausibly plead discriminatory intent.  *See Gen. Bldg. Contractors Ass'n, Inc.,* 458 U.S. at 396; *Body by Cook, Inc. v. State Farm Mut. Auto. Ins*., 869 F.3d 381, 387 (5th Cir. 2017).  For the reasons discussed above, *see supra* § V(B)(2)(ii), the court holds that Taylor has not plausibly pleaded discriminatory intent.  Accordingly, the court dismisses Taylor's claim under the Civil Rights Act of 1866, i.e., a § 1981 claim under § 1983 or asserted directly.

## D

Taylor's claims under Titles IV, VI, VII, and IX of the Civil Rights Act are also subject to dismissal.

- 30 -

1

Some courts have held that Title IV does not contain a private cause of action.  *See Bedford v. Univ. of Louisville Sch. of Med.*, 887 F.2d 1086, 1989 WL 123143, at *3 (6th Cir. 1989) ("The District Court properly found that § 2000c-8 does not create a separate cause of action."); *Brown v. Tex. State Univ. Sys. Bd. of Regents*, 2013 WL 6532025, at *5 (W.D. Tex. Dec. 12, 2013) ("Title IV does not, however, create a private cause of action or, at least, there is no indication in the statute there is authorization for private causes of action."); *see also Beaulieu v. Ashford Univ.*, 529 F.Supp.3d 834, 849-50 (N.D. Ill. 2021) (collecting cases).  Absent controlling authority to the contrary, the court will follow these decisions. Accordingly, Taylor's Title IV claim is dismissed.

2

Unlike Title IV, Title VII does provide a private cause of action to enforce certain provisions of the statute. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 45 (1974) ("[T]he private right of action remains an essential means of obtaining judicial enforcement of Title VII.").  But a Title VII anti-discrimination claim is limited to the employer-employee context. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (explaining that Title VII's anti-discrimination provision is "explicitly limit[ed] . . . to actions that affect employment or alter the conditions of the workplace."); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) ("Title VII prohibits discrimination in the employment context.").  And although Taylor was employed by El Centro College when he was a student, he has not alleged that he was an employee of Dallas College at any pertinent

time thereafter, and this suit does not arise out of his previous employment relationship. *See Diggs v. Harris Hosp.—Methodist, Inc*., 847 F.2d 270, 272 (5th Cir. 1988) ("[A] Title VII claim must necessarily involve an employment relationship."); *Buyze v. Holder*, 2009 WL 10704337, at *1 (N.D. Tex. Aug. 26, 2009) (Lynn, J.) ("An employer-employee relationship is a prerequisite to filing a claim under Title VII."); *see also Gallentine v. Hous. Auth. of City of Port Arthur, Tex*., 919 F.Supp.2d 787, 795 (E.D. Tex. 2013) ("[I]t is well-settled that an employee-employer relationship is an absolute prerequisite to claims filed pursuant to Title VII." (internal quotation marks omitted)). Accordingly, the court dismisses his Title VII claim.

3

"Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ*., 544 U.S. 167, 173 (2005). Similarly, Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Fennell v. Marion Indep. Sch. Dist*., 804 F.3d 398, 407 (5th Cir. 2015) (alteration in original).

Title IX confers a private cause of action. *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 284 (1998). So too does Title VI. *See Alexander v. Sandoval*, 532 U.S. 275, 279 (2001) ("[P]rivate individuals may sue to enforce § 601 of Title VI and obtain both injunctive relief and damages.").

To succeed on either a Title VI or Title IX claim, a plaintiff must show discriminatory

intent.  *See Poloceno v. Dall. Indep. Sch. Dist.*, 826 Fed. Appx. 359, 362 (5th Cir. 2020) (per curiam) ("A plaintiff's Title IX claim must be based on intentional discrimination, not disparate impact"); *Manley v. Tex. S. Univ.*, 107 F.Supp.3d 712, 726 (S.D. Tex. 2015) (Rosenthal, J.); *see also Price ex rel. Price v. La. Dep't of Educ.*, 329 Fed. Appx. 559, 561 (5th Cir. 2009) (per curiam) ("[A] Title VI plaintiff must prove discriminatory intent" (internal quotation marks omitted)).   For the reasons discussed above, *see supra* § V(B)(2)(ii).  Taylor has failed to plausibly plead either discriminatory intent or that similarly-situated individuals were treated differently.  The court therefore dismisses Taylor's Title VI[31] and Title IX claims.

VII

Although the court grants the Institutional Individual Defendants' and the Individual Defendants' motions to dismiss, it also grants Taylor leave to replead.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).   Taylor has not stated that he cannot, or is unwilling

---

[31]There is also a question whether Taylor has statutory standing to assert his Title VI claim.  The Institutional and Individual Defendants contend that Taylor, as a non-student, cannot bring a Title VI claim.  The court need not reach this argument.

to, cure the defects that the court has identified.

Moreover, in granting leave to replead, the court takes into consideration that Taylor is proceeding *pro se*. *See, e.g., Smallwood v. Bank of Am.*, 2012 WL 32654, at *5 (N.D. Tex. Jan. 6, 2012) (Fitzwater, C.J.) (granting leave to file third amended complaint because plaintiffs were appearing *pro se*); *Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *1 (N.D. Tex. Apr. 12, 2004) (Fitzwater, J.) ("Although the court granted Merrill Lynch's motion to dismiss, it gave Robinette one more opportunity to plead his best case, because he was proceeding *pro se*.").

Accordingly, the court grants Taylor 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

## VIII

The court now turns to defendants' motions for a protective order and stay of discovery pending resolution of their motions to dismiss.

### A

The court denies without prejudice as moot defendants' motion for stay of discovery because the court has decided today the motions to dismiss.

### B

The court also denies without prejudice defendants' opposed motion for entry of protective order.

Defendants request a protective order covering certain confidential information, including student personal information and employee information and job performance

- 34 -

evaluations.  Taylor has not responded to the motion.

Rule 26(c) provides, in pertinent part: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'"  *In re Terra Int'l, Inc*., 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir.1978)).

The court denies defendants' motion without prejudice because they have only made "stereotyped and conclusory statements" as to why they have "good cause" for their protective order.  Defendants state that the information they seek to protect—birth dates, addresses, FERPA-protected information—is "highly sensitive" and "confidential." ECF No. 43 at p. 1-2.  They assert that they fear improper dissemination of this information outside litigation.  A party who seeks to protect trade secrets or other confidential information must "demonstrate that its disclosure would cause an identifiable significant harm."  *M-I LLC v. Stelly*, 733 F.Supp.2d 759, 801 (S.D. Tex. 2010) (citations omitted); *Stone Connection, Inc. v. Simpson*, 2008 WL 1927033, at *1 (E.D. Tex. Apr. 28, 2008).  Defendants have failed, however, to identify any harm that would occur from disseminating this information.  *See, e.g., Ford Motor Co. v. Versata Software, Inc*., 316 F.Supp.3d 925, 948 (N.D. Tex. 2017) (Horan, J.) (denying motion for protective order when movant did not articulate any injury);

- 35 -

*Simpson*, 2008 WL 1927033, at *1 (denying motion because "[r]ather than providing the court with a particular or specific demonstration of fact, the Plaintiff merely stated that since this case involves trade secrets and/or confidential and proprietary information, the court should issue a protective order"); *Anzures v. Prologis Tex. I LLC*, 300 F.R.D. 316, 318 (W.D. Tex. 2012) (denying motion, even though plaintiff argued that documents were "personal" and "confidential," because "Plaintiff does not provide any particular and specific demonstrations of fact supporting his requests for relief."); *Sanchez v. Prop. & Cas.*, 2010 WL 107606, at *2 (S.D. Tex. Jan. 7, 2010) ("Hartford has not articulated, or demonstrated factually, that any specific harm will flow from allowing Sanchez's counsel to use these documents [containing potentially confidential information] in other cases."); *Carnaby v. City of Houston*, 2008 WL 4546606, at *1 (S.D. Tex. Oct. 10, 2008) (denying motion and holding that statements that information was "sensitive" was "conclusory and stereotyped."); *see also Exxon Mobil Corp. v. Daybrook Fisheries, Inc.*, 2009 WL 10680073, at *1 (E.D. La. Oct. 28, 2009) ("No particular danger necessitating the prospective release and waiver of rights proposed by ExxonMobil has been demonstrated, and nothing specific in these exhibits supports the imposition of the release and waiver requirement ExxonMobil seeks.").

Accordingly, the court denies defendants' motion for a protective order without prejudice to their filing a motion that establishes good cause for the protective order they request.

- 36 -

IX

Taylor has filed a motion for leave to extend time.

To the extent Taylor moves for an extension of time to file his response to defendants' motion for stay of discovery, the court denies the motion as moot because the court is today denying the motion to stay discovery.

To the extent Taylor requests sanctions under Rule 11, the court denies the request because he has failed to comply with Rule 11(c)(2) and the motion otherwise lacks merit.

Insofar as Taylor seeks any other relief in his motion for leave to extend time, it is denied because he has not demonstrated that he is entitled to the relief requested.

\*   \*   \*

Accordingly, for the reasons explained, the court grants the Institutional Defendants' September 13, 2021 motion to dismiss and the Individual Defendants' September 13, 2021 motion to dismiss; denies defendants' October 21, 2021 motion to stay discovery pending resolution of their motions to dismiss; denies Taylor's October 30, 2021 motion for leave to extend time; and denies defendants' November 19, 2021 opposed motion for entry of protective order.  The court grants Taylor 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

**SO ORDERED**.

January 10, 2022.

_Sidney A. Fitzwater_

SIDNEY A. FITZWATER
SENIOR JUDGE